UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Edward Drummond, | ) | C/A No. 5:15-cv-04285-MGL-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Spartanburg County; | ) | |
| Major Neal Urch; | ) | |
| County Attorney Virginia DuPont; | ) | |
| Asley McCann; | ) | |
| Sgt. Thomas; | ) | |
| Dr. Bonobo; | ) | |
| Nurse White; | ) | |
| Dr. McDonalds, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This is a civil action filed pro se by a local detainee. Pursuant to 28 U.S.C. § 636(b)(1), and

Local Civil Rule 73.02(B)(2)(e) (D.S.C.), this magistrate judge is authorized to review all pretrial

matters in such pro se cases and to submit findings and recommendations to the district court. *See* 28

U.S.C. §§ 1915(e); 1915A (as soon as possible after docketing, district courts should review prisoner

cases to determine whether they are subject to summary dismissal).

I.    Factual Background

Plaintiff is detained at the Spartanburg County Detention Center, currently facing pending

charges of larceny, receiving stolen goods, armed robbery, and possession of a weapon during a violent

crime (all indicted on June 25, 2015), and two charges of threatening a public official (both indicted on

September 25, 2015). *See* http://publicindex.sccourts.org/Spartanburg/PublicIndex/PISearch.aspx (last

consulted Dec. 18, 2015). The major portion of his Complaint consists of allegations regarding certain

medical-related problems he has experienced while detained, but he also alleges facts relating to other

conditions of his confinement. Many of his allegations appear in copies of grievance forms that he attached to the completed court-approved complaint form that he submitted. In an effort to liberally construe Plaintiff's pro se filings as required, the undersigned has considered all of his factual allegations, including those written on the complaint form and those contained in the attached grievance forms, as the 51-page Complaint. ECF No. 1; *see Jeffrey M. Brown Assocs., Inc. v. Rockville Ctr. Inc.*, 7 F. App'x 197, 202-03 (4th Cir. 2001) (attached exhibits are integral parts of the pleading for purposes of motions to dismiss); *Braswell v. Haywood Reg'l Med. Ctr.*, 352 F. Supp.2d 639, 642 (W.D.N.C. 2005); *Rossman v. Lazarus*, No. 1:08cv316 (JCC), 2008 WL 4181195, *6 (E.D. Va. Sept. 3, 2008).[1] A summary of Plaintiff's liberally construed allegations follows.

In his "Claim 1," Plaintiff alleges that he was arrested and detained in July 2013 on charges of failure to stop for a blue light and burglary ("the 2013 charges") and asserts that he and his family suffered financial and emotional loss as a result of the improper charges and detention. Compl. 3, ECF

---

[1] On January 4, 2016—nearly two months since the Complaint was filed and while the case was under initial review—the Clerk of Court received an envelope containing nine pages of what appear to be copies of additional Spartanburg County Detention Center detainee grievance forms that Plaintiff had submitted to the Detention Center on December 23, 2015; October 13, 2015; May 29, 2015; September 28, 2015 (2 forms with this date); May 17, 2015; May 29, 2015; September 26, 2015, and November 25, 2015. No letter or motion or any type of explanation was provided from Plaintiff to explain his reasons for submitting these documents to the court. However, in further effort to liberally construe Plaintiff's allegations in this case, these additional, but un-explained, documents were docketed as an attachment to the Complaint. ECF No. 19. The undersigned has reviewed the contents of those documents and finds that they supplement, but do not change, the allegations in Plaintiff's original Complaint, which are summarized in this Report. The documents appear to have been submitted to show that Plaintiff's asserted problems with some of the named Defendants have continued since the Complaint was filed. *See* Fed. R. Civ. P. 14(d) (governing supplemental pleadings). As an attachment to the Complaint, the documents will be served along with the Complaint on all Defendants for whom service is authorized so that Defendants may respond to anything contained in them they believe necessary to their defense or defenses.

No. 1.[2] Although Plaintiff does not allege that any of the Defendants named in this case took any part in the filing or pursuing the 2013 charges, he asks for significant damages for his alleged associated losses. Plaintiff says that he spoke with "the sheriff" and with Defendant Urch about the 2013 charges in September 2013, he only indicates that Defendant Urch got him into contact with the sheriff and that the "sheriff got all charges drop . . . ." , ECF No. 1 at 3.

In his "Claim 2," Plaintiff alleges that he slipped and fell at the detention center on September 22, 2013, that "Nurse Bishop" examined him, and that Defendant Dr. Bonobo gave him pain medication. Plaintiff also alleges that Defendant Dr. Bonobo diagnosed him with high blood pressure two days later on September 24, 2013 and gave him medication to treat that condition. *Id.* at 3-4. Plaintiff alleges that he was sent to the emergency room at a Greenville hospital and "had two operation to Pyatic [sic] Nerve in [his] back." *Id.* at 4. Plaintiff also alleges that he has a staph infection, which an unnamed "Dr." looked at and told him there were only two "spots" of staph instead of the "three spots" that Plaintiff and his wife thought he had. *Id.* Also in connection with this claim, Plaintiff alleges that "[a] week later," he woke up "to a room enjulf [sic] in gray smoke," which he alleges resulted in his panic attacks and sleep problems for which he is now receiving medication. Plaintiff alleges that he was given intentionally false information from Defendants Urch and DuPont and misled about how he should seek assistance for the resulting injuries and that Defendants White and McCann refused to acknowledge that the slip and fall had even happened. *Id.* at 4.

---

[2] The Spartanburg County Clerk of Court's on-line records show that the 2013 charges to which Plaintiff refers are no longer pending against him. According to those records, the failure to stop for blue light charge was filed on July 12, 2013 and disposed on October 23, 2013 as "dismissed not indicted." The records under Plaintiff's name show no burglary charges filed in 2013. *See* http://publicindex.sccourts.org/Spartanburg/PublicIndex/PISearch.aspx (last consulted Dec. 18, 2015).

In Claim 3, Plaintiff alleges that when he was arrested on March 23, 2015 on the charges that are currently pending against him, his requests for "blood pressure meds and pain meds" were met with "no help" and that he was ultimately "rush[ed] to Spartanburg Reginal [sic] on (4-30-2015)" where unnamed "Dr. And Nurse" asked him how long he had been without meds . . . ." He alleges that he "could have a strock [sic] and Die, Bloodpressure was 178-137 first Reading." *Id*. Plaintiff includes allegations and documentation indicating that he made numerous attempts after March 2015 to obtain medical care from Defendant Dr. McDonalds, Defendant Urch, Defendant Thomas, and Defendant McCann for his blood pressure and a dental problem that resulted from a fall that was allegedly caused by his untreated blood pressure. ECF No. 1 at 15, 20, 21-22, 23-24, 25-26, 33, 42, 44, 45-46.

In his Claim 4, Plaintiff alleges that Defendants White and McCann placed false reports in detention center electronic records about the slip and fall that is the subject matter of his Claim 2 and about follow-up meetings between Plaintiff and other detention center staff. Plaintiff also alleges that Defendants Urch and DuPont have intentionally obstructed his efforts to obtain compensation and medical care for the results of the slip and fall by giving him false information about whom he should contact and telling him they would help him, but then doing nothing. *Id.* at 8-10. As relief for his Claim 1, Plaintiff seeks damages of "1.5 million after taxis! and 150K in Spartanburg County stock opps!" He also asks for a $100,000.00 award for his wife and each of his three children. For his Claim 2, he seeks damages in the amount of $900,000.00, plus $80,000.00 worth of stock options. For both his Claims 3 and 4, Plaintiff seeks $500,000.00 in damages and $50,000.00 worth of stock options. *Id.* at 50.

II.    Standard of Review

Under established local procedure in this judicial district, a careful review has been made of Plaintiff's pro se Complaint filed in this case. This review has been conducted pursuant to the procedural provisions of 28 U.S.C. §§ 1915, 1915A, and the Prison Litigation Reform Act of 1996, and in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden*, *Md. House of Corr.*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983); *Boyce v. Alizaduh*, 595 F.2d 948 (4th Cir. 1979).

Pro se complaints are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). When a federal court is evaluating a pro se complaint, the plaintiff's allegations are assumed to be true. *De'Lonta v. Angelone*, 330 F.3d 630, 630 n.1 (4th Cir. 2003). Nevertheless, the requirement of liberal construction does not mean that this court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990). Even under this less stringent standard, the Complaint filed in this case is subject to partial summary dismissal under the provisions of 28 U.S.C. § 1915(e)(2)(B).

III.    Discussion

Although Plaintiff does not specifically cite to it as the basis for his Complaint, the undersigned has liberally construed his pleading seeking damages for alleged federal constitutional violations by state actors as being one filed pursuant to 42 U.S.C. § 1983. Section 1983 is the procedural mechanism

through which Congress provided a private civil cause of action based on allegations of federal constitutional violations by persons acting under color of state law. *Jett v. Dallas Indep. Sch. Dist*., 491 U.S. 701, 731-32 (1989). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their *federally guaranteed* rights and to provide relief to victims if such deterrence fails. *Wyatt v. Cole*, 504 U.S. 158, 161 (1992) (citation omitted) (emphasis added). No other viable basis for the exercise of this court's subject-matter jurisdiction over Plaintiff's allegations is evident from the face of the Complaint. To state a plausible claim for relief under 42 U.S.C. § 1983, an aggrieved party must sufficiently allege that he or she was injured by "the deprivation of any [of his or her] rights, privileges, or immunities secured by the [United States] Constitution and laws" by a "person" acting "under color of state law." *See* 42 U.S.C. § 1983; *see generally* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1230 (3d ed. 2014). To assert a plausible § 1983 claim against any particular public official, Plaintiff's allegations must show a causal connection or affirmative link between the conduct of which the plaintiff complains and the official sued. *See Rizzo v. Goode*, 423 U.S. 362, 371-72 (1976) (a § 1983 plaintiff must show that he suffered a specific injury as a result of specific conduct of a defendant, and an affirmative link between the injury and that conduct);*Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (for an individual to be liable under § 1983, it must be affirmatively shown that the official charged acted personally in the deprivation of the plaintiff's rights); *see also Kentucky v. Graham*, 473 U.S. 159, 166 (1985). As a general rule, the doctrine of vicarious liability or *respondeat superior* is not available to a § 1983 plaintiff as a means to create liability of a state-actor supervisor for the acts or his/her subordinate. *See Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 694 (1978). If a plaintiff names a particular person as a defendant in a complaint, but fails to allege any wrongdoing by that person within the body of the pleading, the

complaint fails to state a plausible claim and will found frivolous as to that person. *See Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed."); *Newkirk v. Circuit Court of City of Hampton*, No. 3:14CV372-HEH, 2014 WL 4072212 (E.D. Va. Aug. 14, 2014) (complaint subject to summary dismissal where no factual allegations against named defendants within the body of the pleading). In the absence of substantive allegations of wrongdoing against the named Defendant, there is nothing from which this court can liberally construe any type of plausible cause of action arising from the Complaint against him. *See Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996) (statute allowing dismissal of *in forma pauperis* claims encompasses complaints that are either legally or factually baseless); *Weller v. Dep't of Social Servs.*, 901 F.2d at 389 n.2 (dismissal proper where there were no allegations to support claim). Additionally, it is well settled that only "persons" may act under color of state law; therefore, a defendant in a § 1983 action must qualify as a "person." For example, several courts have held that inanimate objects such as buildings, facilities, and grounds do not act under color of state law. *See Preval v. Reno*, 57 F. Supp. 2d 307, 310 (E.D. Va. 1999) ("[T]he Piedmont Regional Jail is not a 'person,' and therefore not amenable to suit under 42 U.S.C. § 1983."); *Brooks v. Pembroke City Jail*, 722 F. Supp. 1294, 1301 (E.D.N.C. 1989) ("Claims under § 1983 are directed at 'persons' and the jail is not a person amenable to suit."). A plaintiff's use of the term "staff" or the equivalent as a name for alleged defendants, without the naming of specific staff members, is not adequate to state a claim against a "person" as required in § 1983 actions. *See Barnes v. Baskerville Corr. Cen. Med. Staff*, No. 3:07CV195, 2008 WL 2564779 (E.D. Va. June 25, 2008).

A.     Claim 1: The 2013 Arrest and Detention

In light of the legal authority cited above, Plaintiff's Complaint should be partially summarily dismissed insofar as it seeks damages from any of the named Defendants under his Claim 1, which is based on allegations that his arrest and subsequent detention on the 2013 charges were improper. Plaintiff does not allege that any named Defendant participated in any events leading to his arrest on the 2013 charges, nor does not allege that any of them participated in filing the charges against him or, ultimately, dismissing them. *Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000) (discussing Fourth Amendment "malicious prosecution" and "false arrest" claims); *Brooks v. City of Winston-Salem, N.C.*, 85 F.3d 178, 183-85 (4th Cir. 1996) (same). Thus, Claim 1 fails to state a plausible claim for § 1983 relief against any named Defendant because there are no allegations from which this court could reasonably infer that any of them were in any way involved Plaintiff's arrest and subsequent detention on the 2013 criminal charges. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (initial pleadings, whether submitted by attorneys or by pro se litigants, must contain sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Rizzo v. Goode*, 423 U.S. at 371-72; *Potter v. Clark*, 497 F.2d at 1207. Because Plaintiff's Claim 1 fails to state a plausible § 1983 claim against any Defendant, it should be summarily dismissed in its entirety.

B.     Claims 2 and 4: The 2013 slip and fall, medical care, and follow-up communications

Plaintiff's allegations in his Claim 2 fail to state a plausible medical-indifference claim against any Defendant relating to his medical care following his slip and fall and his initial diagnosis of high blood pressure. No plausible § 1983 claim is stated because Plaintiff's allegations show that he received substantial treatment with pain medication and physical examinations after the fall and was

8

diagnosed with and given medication to control his high blood pressure during the same period of detention. At most, Plaintiff's allegations connected to Claim 2 show a possible disagreement between Plaintiff and medical personnel over the type or amount of medication and treatment provided. There are no allegations that his injuries from the fall or his high blood pressure conditions were ignored by any Defendant or that the treatment he received during the time period that Claim 2 covers were inadequate to treat the condition or that the treatment was unreasonably delayed. Thus, no medical indifference is shown by the allegations in Claim 2. *See Estelle v. Gamble*, 429 U.S. 97, 105-06 (medical malpractice or negligence in diagnosis or treatment is not sufficient to form the basis of a constitutional claim); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (emphasis added) ("[a]lthough the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice."); *Bentley v. Colon*, No. 0:13-cv-02322-RBH, 2015 WL 3400571, at *5 (D.S.C. May 27, 2015) *aff'd*, No. 15-6964, 2015 WL 6437200 (4th Cir. Oct. 23, 2015). Even if Plaintiff's Claim 2 allegations could be construed as stating a medical-malpractice claim against some Defendants, that would not require any Defendant to respond to the medical aspects of Claim 2 because medical malpractice is a state-law based claim that can only be considered by this court under its diversity jurisdiction. *See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 200-03 (1989) (§ 1983 does not impose liability for violations of duties of care arising under state law). There are no allegations from which this court could determine that this Complaint could be considered under diversity jurisdiction because it appears that Plaintiff and all Defendants are residents of the State of South Carolina. *See, e.g., Newman-Greene, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989) (to maintain a diversity suit in federal court, no plaintiff can be a

citizen of the same state as any of the defendants); *C.L. Ritter Lumber Co. v. Consolidation Coal Co.*, 283 F. 3d 226, 229 (4th Cir. 2002) (same).

Also, Plaintiff's allegations in his Claim 2 relating to his being trapped in a smoky room fail to state plausible failure-to-protect/indifference-to-inmate-safety claims against any Defendant. There are no allegations relating to the smoky room incident naming any Defendant as being responsible for the smoke and no allegations from which the court could infer that any of the Defendants had knowledge of or ability to prevent that smoky condition. *See Farmer v. Brennan*, 511 U.S. 825, 835-40 (1970) (subjective recklessness test for deliberate indifference requires actual knowledge of facts establishing a substantial risk of serious harm); *Case v. Ahitow*, 301 F.3d 605, 605 (7th Cir. 2002) (citing *Farmer* for the proposition that "deliberate indifference to the plaintiff's safety, mean[s] that [prison officials] knew of a serious danger to him (really knew -- not just should have known, which would be all that would be required in a negligence case) and could easily have prevented it from materializing but failed to do so . . . ."); *Larry v. South Cent. Reg'l Jail*, No. 2:10-cv-01241, 2011 WL 7394618, at *10 (Dec. 27, 2011) ("The plaintiff must demonstrate that these defendants had actual knowledge of a serious risk of harm . . . ."), *report and recommendation adopted*, 2012 WL 524443 (S.D.W. Va. Feb. 16, 2012).

Finally, the remaining allegations against Defendants Urch, McCann, and DuPont that comprise the remainder of Claim 2 and all of Claim 4—liberally construed as claims of denial of access to court and/or intentional obstruction of the detention center's grievance system—also fail to state plausible § 1983 claims. Although Plaintiff alleges that these Defendants acted unethically and gave him and others incorrect or misleading information about Plaintiff's rights and options to seek personal-injury compensation from Spartanburg County for the slip and fall that he suffered during his

2013 period of detention, he does not allege that he suffered any type of actual injury such as rejection of a claim for compensation from the county or dismissal of a civil action filed against the county. An actual injury must be pleaded to state a plausible § 1983 claim based on denial of access to court.[3] *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Strickler v. Waters*, 989 F.2d 1375, 1384 (4th Cir. 1993); *Rutland v. Dewitt*, No. 8:09-cv-1717-SB, 2009 WL 4667089, at *3 (D.S.C. Dec. 9, 2009). Insofar as Plaintiff's allegations against Defendants Urch, McCann, and DuPont could be liberally construed as claims that their communications and actions obstructed Plaintiff's ability to effectively access and utilize the detention center's detainee grievance system, no plausible § 1983 claim is stated. It is settled that a prisoner has no constitutional right to a working grievance system in the institution of confinement. *See Pierre v. Ozmint*, No. 3:09-cv-226-CMC-JRM, 2010 WL 679946, * 4 (D.S.C. Feb. 24, 2010) (citing *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994)). Because Plaintiff's Claim 2 and Claim 4 allegations fail to state plausible § 1983 claims against any Defendant, they both should be summarily dismissed.

C.    Claim 3: Medical Care in 2015

The Complaint should not be served on either Defendant Spartanburg County or Dr. Bonobo because no plausible § 1983 claims of any type are stated against them under the only remaining claim

---

[3] Plaintiff recently provided a grievance form addressed to Defendant Urch and dated September 28, 2015, in which he asserts that some civil suit was "denide" and that he believes the denial was the result of oppression and obstruction at his living area in the detention center. Plaintiff has not provided any identifying information concerning the allegedly denied civil suit. ECF No. 19 at 7; *see supra* n.1. As such, even construing Plaintiff's assertions liberally, such conclusory statements fail to satisfy the actual-injury requirement. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (claims need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action) (citations omitted); *Slade v. Hampton Roads Reg'l Jail*, 407 F.3d 243, 248, 253-54 (4th Cir. 2005) (pro se pleading dismissal affirmed where insufficient facts alleged to put defendants on notice of or to support asserted constitutional-violation claim).

in the pleading: Claim 3. Claim 3 relates to Plaintiff's medical care upon his 2015 re-admission to the detention center. There are no allegations of any independent wrongdoing by the County, nor can the County be found liable for the wrongdoing of personnel in any of the courts in Spartanburg County or in the Spartanburg County Detention Center. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (a municipality can only be liable under § 1983 for its own official practice, policy, or custom that violates the constitution); *Zepp v. Rehrman*, 79 F.3d 381, 385 (4th Cir. 1996) (same); *Spartanburg Cnty. Dep't of Soc. Servs. v. Padgett*, 370 S.E.2d 872, 875-76 (S.C. 1988) (citing Article V, Section 1 of the South Carolina Constitution for the proposition that the State of South Carolina retains the sole authority to supervise its court regardless of the county where the court resides). Also, Defendant Bonobo is only mentioned in Plaintiff's allegations relating to his Claim 2 and the only allegations there are that he treated Plaintiff after the slip and fall and for high blood pressure. There are no allegations that he denied Plaintiff any medical care, and, at most, the allegations could be construed as stating that Plaintiff did not agree with the diagnosis he received and amount of medicine he was given. As previously discussed, no plausible medical-indifference claim or medical-malpractice claims are stated by such allegations. *Jackson v. Fair*, 846 F.2d at 817. Accordingly, the Complaint should be partially summarily dismissed insofar as it seeks any relief from Defendants Spartanburg County or Dr. Bonobo. However, the undersigned finds that the Claim 3 allegations are sufficient to state facially plausible medical-indifference and deliberate-indifference-to-inmate-safety claims against the remaining Defendants.

IV.    Recommendation

Accordingly, it is recommended that the district court partially summarily dismiss the Complaint in this case *without prejudice* in its entirety against Defendants Spartanburg County and Dr.

Bonobo.

It is further recommended that Claims 1, 2, and 4 in the Complaint be summarily dismissed against all Defendants.

Simultaneously with the filing of this Report and Recommendation, the court has authorized service of the Complaint on Defendants Urch, DuPont, McCann, Thomas, White, and Dr. McDonalds with directions that they respond only to the allegations relating to Claim 3. *See Brown v. Briscoe*, 998 F.2d 201, 202-04 (4th Cir. 1993); *see also* 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A (as soon as possible after docketing, district courts should review prisoner cases to determine whether they are subject to summary dismissal).

IT IS SO RECOMMENDED.

January 6, 2016                                    Kaymani D. West
Florence, South Carolina                           United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 2317**
**Florence, South Carolina 29503**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).